UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHILIP KLOSIN,

                    Petitioner,

      -vs-

JAMES CONWAY, Superintendent, Attica
Correctional Facility,

                Respondent.
_____

**DECISION AND ORDER**
**No. 02-CV-0473(VEB)**

## I.  Introduction

Philip Klosin ("Klosin" or "petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1998 conviction in Wyoming County Court on charges of felony murder, robbery, and burglary. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c)(1).

## II.  Factual Background and Procedural History

The conviction here at issue arose from a home invasion on November 6, 1992, in which three masked men forced their way into the home of forty-six year-old Memarie Stasio ("Mrs. Stasio") and her daughter, Jennifer Stasio ("Stasio") in the Town of Arcade. *See* T.278-84, 349-56. After holding the two women at gun-point and ransacking the house, the perpetrators fled, taking with them Mrs. Stasio's purse containing cash, credit cards, and her nitroglycerine pills used to treat her life-long heart condition. T.281-92. Mrs. Stasio, who was seen clutching her chest and hyperventilating uncontrollably immediately after the incident, was taken to the hospital that night. T.281-90. She was released early the next morning but continued to complain

of weakness, headaches and sleeplessness. T.290-91. The victim's family found her dead in her home on November 8, 1992, less than two days after the incident.

Klosin, Smith and Lang were all arrested within twenty-four hours of the crime and charged with first degree burglary and first degree robbery.  Klosin pled guilty to second degree manslaughter in satisfaction of all the charges and was sentenced to five to fifteen years in prison. On April 23, 1998, however, Klosin's conviction was reversed on his direct appeal due to a defect in the charging instrument. Klosin was re-indicted by a Wyoming County grand jury on June 12, 1998, on two counts of second degree murder under N.Y. Penal Law § 125.25(3) (felony murder incident to burglary and felony murder incident to robbery); one count of second degree  (depraved indifference) murder under N.Y. Penal Law § 125.25(2); two counts of first degree robbery under N.Y. Penal Law §§ 160.15(3), (4); and one count first degree burglary under N.Y. Penal Law § 140.30(4). *See* T.763-64.

One week before Klosin's trial commenced in Wyoming County Court, prosecution witness Jody Elvers-Frank ("Elvers-Frank") disclosed to the district attorney's office that part of her testimony before the grand jury had been false. She stated that she although had testified truthfully that Klosin and the co-defendants had planned the robbery while they were all at a party in Springville earlier that evening, her testimony that she had stayed behind at the party while Klosin, Smith and Lang went to the commit the robbery was false. (R.22). According to Elvers-Frank, she was supposed to have been taken home by her boyfriend, Smith, but she passed out in the car during the drive.  Elvers-Frank woke up in the car parked outside the Stasio home just as the robbery commenced. The prosecutor disclosed this information to Klosin's defense counsel and entered into a cooperation agreement with Elvers-Frank, which also was provided to

defense counsel. Respondent's Brief on Appeal (citing R.17-19).

Trial commenced on December 9, 1998, before Judge Griffith. Jennifer, the victim's daughter, testified first for the prosecution. *See* T.276 *et seq.* She recounted that on the night of the incident, she was at home with her mother watching television when they heard a pounding at the door. Thinking that they had inadvertently locked their father out of the house, Jennifer said that her mother got up to answer the door. T.278. Jennifer then heard her mother scream; she jumped up and saw a masked man standing inside the house near the front door holding a gun. T.279. As Jennifer attempted to go into the kitchen to get her father's gun, another masked man holding a gun intercepted her. She recounted that the fabric covering his face slipped and she recognized him as Lang, an acquaintance of hers from when she had gone to school in Springville. Lang forced her onto the floor in the front room where her mother was already lying face down with a gun pointed to her head. T.279-80. Jennifer testified that there were three perpetrators and they all had guns. *E.g.*, T.284, 293.

Jennifer testified that the three men ransacked the house and kept pushing the guns in their faces, demanding to know where Mrs. Stasio kept her purse and her money. See, e.g., T.284. At that point, Jennifer testified, her mother lost control of her bodily functions and urinated and defecated on herself.  T.284. Jennifer related that she got up and showed the intruders where her mother's purse was; it contained "credit cards and pictures, and a little bit of money, [and] her nitroglycerine pills[.]" T.285. Before the perpetrators left, they threatened to burn down the Stasio's house if the police were called. T.286.

Jennifer testified that her mother was "hysterical" and grabbing at her chest" after the incident and had to be helped as she crawled down the hallway on her hands and knees to her

home office, where the phone was. T.286-87. When the police arrived, Mrs. Stasio was "slouching over, holding her chest, and she was having really bad dizzy spells" so the paramedics were called. T.288. Sergeant Ronald Ely, who responded to the scene, testified that Mrs. Stasio "was about the color of an apple, totally scared to death, trembling, shaking, could hardly walk, [and was] crying quite heavily." T.614. Jennifer searched the house but could not find any more of Mrs. Stasio's nitroglycerine pills for her heart condition; the only bottle apparently was in her purse, which had been taken. T.318. Mrs. Stasio was taken to the hospital and was discharged the following morning at about 4:00 a.m. T.290. Jennifer testified that after her mother came home, she "was really weak" and was "having really, really bad headaches and she couldn't sleep." T.290. Mrs. Stasio refused to back to the hospital because she was afraid that the intruders were going to come back for her daughter. T.320.

Jennifer testified that at about 5 p.m. on November 8th, Mrs. Stasio went into her home office to do the payroll for her business after the family had had dinner. T.291. About fifteen to twenty minutes later, Jennifer heard her father "screaming for [her] to come in and call 911, that [her mother] had passed away." T.291.

Accomplice Michael Smith ("Smith"), who had since been released from prison for his part in the crime, testified for the prosecution. He related being at party in Springville on November 6, 1992, with Klosin and Lang, "drinking, doing drugs." T.344-46. They "didn't have no more money to buy booze or drugs . . . so [they] talked about robbing something, stealing it from someplace." T.347. According to Smith, Klosin also wanted money to go down to visit his girlfriend in Florida. T.347. Smith, Klosin and Lang, along with Smith's then-girlfriend, Elvers-Frank, drove in Smith's Jeep Wagoneer to the Stasio residence in the town of Arcade. T.349.

-4-

Smith testified that Elvers-Frank was not involved in planning the robbery and never got out of the truck that night. T.351. Smith had planned to drop her off at home before the robbery, but she was asleep in the back seat and he did not feel like waking her up. T.352.  Smith testified that Elvers-Frank woke up just after they parked in front of the Stasio residence and said that they "shouldn't be doing this." T.352. Smith told her to "sit in the truck." *Id.* Smith related that he and Klosin and Lang wrapped t-shirts around their faces and walked up to the Stasio home. Klosin knocked on the door and they then "bashed" through it as Mrs. Stasio began to open the door. Smith's testimony regarding the events inside the house in all essential respects mirrored Jennifer's testimony except with respect to the issue of how many guns there were. Smith testified that only Klosin had a gun (a shotgun) while Jennifer stated that all three perpetrators had guns. Smith testified that Klosin threw the gun in the creek as they drove over the Mill Street Bridge outside of Springville. T.363. Smith discarded Mrs. Stasio's purse under a dumpster behind the Ames Plaza in Springville. T.363-64. (The purse later was recovered by Sheriff's Deputy Norman Cochise Redeye between two dumpsters behind the Amess Plaza. T.434)

Jody Elvers-Frank testified for the prosecution consistently with Smith's testimony regarding the party in Springville,the planning and commission of the robbery, her intoxication that night, and her lack of involvement in the crime itself.  Smith asked her to throw Mrs. Stasio's purse in the dumpster, but she refused to do it. T.402. Elvers-Frank testified that he had not seen Smith in the past five or six years and said, "I'm actually afraid that after he hears that I told told the truth, I don't know what's gonna [sic] happen." T.400.  Elvers-Frank testified that she did not tell the truth initially because Smith threatened her numerous times, saying, for instance, that he was "going to bury [her] in 20-Acre Lake if [she] said anything." T.431, 432-33.

Elvers-Frank admitted that when she testified in the grand jury six years previously, she had been untruthful when she said that she stayed at the party in Springville and had not admitted to being in the car with Smith and the others. T.403. She lied because Smith had told her that she should not even say she was present at the Stasio residence because she "had no part in it" and he did not want her to "mess up" their statements to the police.  T.403. Elvers-Frank testified that she decided to come forward and tell the truth because she had too much to lose at that point in her life. T.403-04.

Robert Bergner, M.D., the victim's treating physician for thirty-two years prior to her death, testified that she had a long history of rheumatic heart disease and cardiac arrhythmias, arteriosclerotic and hypertensive heart disease, which was controlled and stabilized by various medications, including nitroglycerine, which dilates the coronary arteries and relieves spasms. T.465-67; T.484; T.497. Dr. Bergner testified that as of 1992, Mrs. Stasio's condition had been stabilized and that she had been fully functional for many years. Dr. Bergner reviewed Mrs. Stasio's hospital records and the autopsy report and opined that, to a reasonable degree of medical certainty, the victim "died as a result of heart disease which had been aggravated by an emotional trauma and a physical trauma." T.470-72; T.522.  The victim had an arrhythmia which created an insufficient supply of blood to the brain and she died as a result. T.472. Dr. Bergner testified that if Mrs. Stasio had access to her nitroglycerine pills after the burglary, it "would have reduced coronary artery spasm" (constriction of the coronary arteries) and "anginal pain[.]" T.476. Dr. Bergner testified that he believed Mrs. Stasio was suffering from an attack of arrhythmia after the incident based on the electrocardiogram taken at the hospital. T.486-87. Although Mrs. Stasio had a history of cardiac arrhythmia, it was Dr. Bergner's opinion that the

stress of the burglary was a contributory cause of the arrhythmias that occurred after the robbery.

Dr. Sung Ook Baik, the Erie County Medical Examiner, testified regarding the findings of the autopsy he performed on the victim on November 9, 1992. T.543 *et seq*. Dr. Baik opined that to a reasonable degree of medical certainty, the victim "died of arteriosclerotic and hypertensive heart disease which was rapidly deteriorated by [the] robbery and being threatened by [sic] a gunpoint." T.544. Dr. Baik explained that Mrs. Stasio had existing heart disease which was aggravated by the "extensive" physical and emotional stress of the robbery which caused her to have an "acute heart attack." T.545. Dr. Baik testified that the victim's heart was abnormally large in size--550 grams–while a normal, healthy heart would weigh about 270 to 300 grams; this indicated to him that she had severe heart disease. T.545.

Klosin's defense counsel moved to dimiss the indictment on the basis that there was no evidence placing a gun in Klosin's hands and "absolutely no corroboration of the testimony of Michael Smith." Defense counsel also asked for the trial court to declare Elvers-Frank as an accomplice as a matter of law and stated that her testimony was uncorroborated as well. Finally, defense counsel argued that there was no evidence that Klosin or any of his actions caused the death of the victim. T.588. This application was denied. T.589.

The jury returned a verdict convicting Klosin on all four counts submitted to it. Klosin was sentenced to concurrent indeterminate terms of imprisonment of twenty years to life on the two felony murder convictions, to be served concurrently with concurrent indeterminate terms of six and two-thirds to twenty years on the robbery and burglary convictions. On direct appeal, Klosin argued that various errors occurred in the grand jury proceeding; that the trial court improperly marshaled trial evidence; that the prosecutor committed misconduct; that the verdict

-7-

was against the weight of the evidence on the issue of whether defendant caused the victim's death; that the trial court erred in allowing the victim's treating physician to testify regarding the cause of death; that the trial court erroneously failed to give a missing witness jury instruction; and that the sentence was unduly harsh and severe. that the prosecution presented perjured testimony in the grand jury, that there was insufficient evidence to support the indictment. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction on December 15, 1998. *People v. Klosin*, 281 A.D.2d 951 (App. Div. 4th Dept. 2001).  The New York Court of Appeals denied leave to appeal on June 22, 2001. *People v. Klosin*, 96 N.Y.2d 864 (N.Y. 2001).

Klosin, proceeding *pro se*, filed a petition for a writ of habeas corpus in this Court. *See* Petition ("Pet.") (Dkt. #1) Ground one of the petition asserts that "false accomplice and corroboration testimony before the grand jury rendered the grand jury proceeding defective" and "false testimony before the grand jury also rendered the evidence insufficient." Pet. at 5, ¶A (Dkt. #1). Ground two asserts that the "trial court committed reversible error when it marshaled corroborative evidence for the trial jury which was never in evidence before the grand jury." Pet. at 5, ¶B (Dkt. #1).  Ground three states that "the grand jury was never informed of the perjured testimony" and the "D.A. granted imunity [sic] to said person and allowed them to testify at trial, contradicting testimony that was said to the grand jury." Pet. at 6, ¶C. Ground four contends that "the verdict was against the weight of the evidence" because the medical witnesses "contradicted each other" as to the cause of death, creating a reasonable doubt. Pet. at 6, ¶D.

After respondent served its answer and memorandum of law in opposition to Klosin's petition (*See* Dkt. ##5, 6), Klosin submitted a document titled "Answer and Memorandum of

Law in Opposition to Respondent's Answer." This appears to be an exact copy of his brief on direct appeal, except for two pages which have additional argument regarding the perjury claims he asserts in the form habeas petition. This brief contains all of the claims raised on direct appeal, and therefore contains additional claims to those set forth in the form habeas petition. In its answer and memorandum of law, respondent only addressed the four claims raised in the petition (Dkt. #1).

Because Klosin did not raise the additional arguments in his initial petition and, therefore, denied the respondent an opportunity to respond to the claims, they need not be considered by this Court basis for relief. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999) (declining to consider the defendant's argument because it was raised for the first time in his reply brief); *United States ex rel. Morgan v. McElroy*, 981 F. Supp. 873, 876 n. 3 (S.D.N.Y.1997) (declining to consider a number of "eleventh hour" claims raised for the first time in the petitioner's reply brief); *United States v. Gigante*, 39 F.3d 42, 50 n.2 (2d Cir. 1994) (declining to consider arguments were raised for the first time in the defendants' reply brief because "[a]rguments may not be made for the first time in a reply brief") (citations omitted)); *see also Bradley v. Burge*, 2007 WL 1225550, *8 (S.D.N.Y. Apr. 19, 2007) ("[B]ecause the petitioner did not raise the argument in his initial petition and, therefore, denied the respondent an opportunity to respond to the claim, it is not a basis for relief.") (citations omitted). However, in light of the fact that Klosin is proceeding *pro se*, and in the interest of completeness, the Court has reviewed the additional claims in Klosin's reply memorandum of law and finds that they are lacking in merit under any standard of review, as discussed below.

For the reasons set forth below, Klosin's application for a writ of habeas corpus is denied

and the petition is dismissed.

## III.   Discussion

### Grounds One and Three:    Errors in the Grand Jury Proceeding

On direct appeal, the Appellate Division rejected Klosin's claims attacking the grand jury

proceeding:

> There is no indication that the People knowingly or deliberately presented false testimony before the Grand Jury, and thus there is no basis for finding that the integrity of the Grand Jury proceedings was impaired or the indictment rendered defective by the alleged false testimony. The record is insufficient to enable us to review whether the alleged false testimony materially influenced the Grand Jury, thus giving rise to the requisite possibility of prejudice to defendant. A challenge to the sufficiency of the evidence before the Grand Jury is not reviewable on appeal from a conviction rendered on legally sufficient evidence. In any event, the sufficiency of the evidence before the Grand Jury is not affected by whether some of the evidence was later revealed to be mistaken or even perjurious. "Evidence later proven unreliable can legally support an indictment[.]"

*People v. Klosin*, 281 A.D.2d at 952 (citations and quotation omitted). Klosin concedes in his

papers submitted to this Court that "there is nothing in the record indicating that trial assistant

[sic] knowingly presented false evidence to the Grand Jury[.]" Pet'r Mem. at 20 (Dkt. #8).

As respondent correctly contends, Klosin's claims of error in the grand jury proceeding

are not cognizable on federal habeas review because Klosin was convicted following a trial

before a petit jury. *See United States v. Mechanik*, 475 U.S. 66, 68 (1986); *Lopez v. Riley*, 865

F.2d 30, 32 (2d Cir. 1989).  *Mechanik* involved a defendant's attack on the integrity of the

federal grand jury proceeding. The Supreme Court rejected defendant's claims, explaining that

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

475 U.S. at 70.  In the context of a petitioner's challenge to his state court conviction by means

of federal habeas, the Second Circuit has held that "[i]f federal grand jury rights are not

cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a

state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal

court." *Lopez*, 865 F.2d at 32 (citing *Mechanik*, 475 U.S. at 70). Thus, any alleged deficiencies in

Klosin's grand jury proceeding were cured by his conviction by the petit jury, which found that

the evidence was sufficient to prove Klosin's guilt beyond a reasonable doubt.  *See Lopez v.*

*Riley*, 865 F.2d at 32 (holding that habeas petitioner's "claims of impropriety before the grand

jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory

evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the

law" . . . were "cured in the trial before the petit jury, which convicted"). Grounds one and three

do not provide a basis for habeas relief and are dismissed.

**Ground Two:**          **Erroneous marshaling of evidence by the trial court**.

Klosin contends that the trial court committed reversible error "when it marshaled the

corroborative evidence during the charge and included the testimony of Jody Elvers[-]Frank

concerning [Klosin's] conduct in the vehicle driven by [co-defendant] Mr. Smith to and from the

Stasio residence . . . ." Pet'r Mem. at 30 (citing T.726) (Dkt. #8). According to Klosin, "[t]hat

evidence was never considered by the grand jury in this case." *Id.* During the charging

conference, with regard to the instruction on "corroboration of accomplice [testimony]", the trial

court noted that it was required by law to review for the jury the evidence of corroboration.

T.653; 654-55. The judge noted that he intended to "state that the other evidence includes Jody

Elvers-Frank's testimony that the Defendant discussed plans to rob the Stasio's during a party on

November 6, 1992; and further, that Jody Elvers-Frank's testimony concerning the Defendant's conduct in the vehicle driven by Michael Smith to and from the Stasio residence on November 6, 1992; and also that testimony of Jennifer Stasio as [it] relates to her prior knowledge of who Jacob Lang was and [that] she had known him for approximately three years, and therefore, was able to identify him when his scarf came off." T.653-54. Defense counsel indicated that the proposed instruction was acceptable. T.656.The trial judge charged the jury accordingly.  T.725-27.

When Klosin raised this claim on direct appeal, the prosecution argued that "a witness testifying at trial may testify to matters beyond the scope of their original grand jury testimony[,]" and "[n]o constitutional or statutory law exists to prevent this everyday occurrence[.]" The Appellate Division summarily rejected the claim as "without merit." *People v. Klosin*, 281 A.D.2d at 952.

It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68  (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Before a federal court may overturn a conviction resulting from a state trial in which an erroneous instruction was used, or a properly requested instruction was not given, it must be established not merely that the instruction was erroneous, but that it "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v Naughten*, 414 U.S. 141, 146 (1973); *accord*, *e.g.*, *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). Neither Klosin's brief on direct appeal nor his memorandum in support of his habeas petition cites any case law–state or

federal–in support of his contention that it was reversible error for the trial court, during its

charge to the jury, to marshal corroborative evidence which was presented at trial but not at the

grand jury proceeding. The Court has reviewed the trial transcript and based on the foregoing

discussion to the extent that the trial court "marshaled" the evidence on the issue of

corroboration, it was not unfair to the petitioner. The Court cannot discern any error of state law

or any error of federal constitutional magnitude in the trial court's charge. Accordingly, this

claim does not provide a basis for habeas relief.

**Ground Four:          The verdict was against the weight of the evidence.**

Klosin argued on direct appeal, and argues here, that verdict as to the issue of causation in

regard to the felony murder charges was against the weight of the evidence. Klosin did not use

the phrase "sufficiency of the evidence" in his brief on direct appeal, nor does he do so in any of

his habeas pleadings.  On direct appeal, the Appellate Division held that "[t]he verdict is not

against the weight of the evidence on the issue whether the fright and stress of the break-in and

gunpoint robbery caused the victim's death two days later[.]" *People v. Klosin*, 281 A.D.2d at

952 (citations omitted).  Respondent argues that this claim was not fairly presented in federal

constitutional terms to the state courts and therefore is unexhausted. Respondent also argues that

the claim is barred under the adequate and independent state law ground doctrine because the

Appellate Division rejected Klosin's claims "as without merit, under state law." Resp't Mem. at

7 (Dkt. #5). However, respondent characterizes Klosin's "weight of the evidence" claim as a

"legal insufficiency" claim in his memorandum of law and asserts that "federal habeas corpus

review is not available for petitioner's claim that the evidence at trial was legally insufficient to

support his conviction." Resp't Mem. at 6 (Dkt. #6).

Klosin's "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law § 470.15(5). Thus, a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d 490, 495 (N.Y. 1987).[1] Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. at  68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

---

[1]  The New York Court of Appeals explained the difference as follows:

Although the two standards of intermediate appellate review-legal sufficiency and weight of evidence-are related, each requires a discrete analysis. For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.

To determine whether a verdict is supported by the weight of the evidence, however, the appellate court's dispositive analysis is not limited to that legal test. Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony."

*People v. Bleakley*, 69 N.Y.2d at 495, 515 N.Y.S.2d at 763 (citations omitted).

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. *Ex parte Craig*, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255  (1923); *Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (same); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (same).[2]

The Court recognizes the principle that complaints of *pro se* petitioners are to be considered liberally in their favor, *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, some habeas courts have construed "weight of the evidence" claims as "insufficiency of the evidence" claims. *E.g.*, *Davis v. McLaughlin*, 122 F. Supp.2d 437, 441 (S.D.N.Y. 2000) (treating petitioner's claim that his conviction was against the weight of the evidence and that the prosecution did not prove his guilt beyond a reasonable doubt as "legal sufficiency" claim); *Wilson v. Senkowski*, No. 02 Civ. 0231(HB)(AJP), 2003 WL 21031975, at *8 (S.D.N.Y. May 7,

---

[2]        *See also Garbez v. Greiner*, No. 01Civ.9865(LAK)(GWG), 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."); *Lemons v. Parrott*, 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim."); *McBride v. Senkowski*, 98 Civ. 8663, 2002 WL 523275, at *4 n. 2 (S.D.N.Y. Apr. 8, 2002) (holding that a weight of evidence is not cognizable on habeas review); *Correa v. Duncan*, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001) (A "'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. Accordingly, the Court is precluded from considering the [weight of the evidence] claim.") (citations omitted); *Peralta v. Bintz*, 00 Civ. 8935, 2001 WL 800071, at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his petition must be denied."); *Kearse v. Artuz*, 99 Civ. 2428, 2000 WL 1253205 at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief."); *Rodriguez v. O'Keefe*, 96 Civ.2094, 1996 WL 428164 at *4 (S.D.N.Y. July 31, 1996) ("A claim that the verdict was against the weight of the evidence is not cognizable on habeas review."), *aff'd*, No. 96-2699, 122 F.3d 1057 (table) (2d Cir. Sept. 9, 1997), *cert. denied*, 522 U.S. 1123 (1998); *see also*, *e.g.*, *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues).

2003) (denying "weight of the evidence-claim as not cognizable on federal habeas review but also "broadly interpret[ing]" petitioner's "weight of the evidence" claim to raise a "sufficiency of the evidence claim") (Report and Recommendation) (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). Here, respondent explicitly has construed Klosin's claim as one alleging that the evidence against him was legally insufficient to support the verdict convicting him of felony murder, and has set forth legal argument in his opposition memorandum of law (Dkt. #6) as to why the proof as to causation of death was legally sufficient under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). For those reasons, and in keeping with the precepts of *Haines v. Kerner*, 404 U.S. 519, *supra*, the Court will address the merits of petitioner's "weight of the evidence"claim as a "sufficiency of the evidence" claim below.

The standard for assessing the sufficiency of the evidence to support a guilty verdict is well settled, and it is the same under both Federal and New York state law:  The reviewing court is limited to asking whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *accord, e.g, People v. Contes*, 60 N.Y.2d 620, 621 (N.Y. 1983). A federal court considering the sufficiency of a state law conviction "must look to state law to determine the elements of the crime," *Fama v. Commissioner of Corr. Services*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted); *accord Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999), and consider whether "there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted).

In this case, to establish that Klosin was guilty of felony murder as charged in the indictment, the prosecution was required to prove that Klosin or one of his cohorts, in the course of and in furtherance of committing either first burglary or first degree robbery, caused the death of the victim and that the victim was not a participant in the underlying burglary or robbery. *See* N.Y. Penal Law § 125.25(3).

The New York Court of Appeals has issued various rulings on the meaning of the term "causes" both in the context of Penal Law § 125.25(3), the felony murder statute under which Klosin was charged, and the other sections of the murder statute, New York Penal Law §§ 125.25(1), 125.25(2). For instance, in *People v. Kibbe*, 35 N.Y.2d 407 (N.Y. 1974), the defendants were held to have "caused" the victim's death when they left him highly intoxicated, with his pants down to his ankles and no coat, by the side of an unlit road in freezing temperatures; the victim was subsequently struck and killed by a passing truck. In upholding the defendants' convictions, the New York Court of Appeals stated that in evaluating criminal liability with respect to the felony murder statute, a defendant's "actions must be a sufficiently direct cause of the ensuing death," *Kibbe*, 35 N.Y.2d at 413, so that the fatal result was "something which should have been foreseen as being reasonably related to the acts of the accused," *id.* at 413. The Court of Appeals has recognized that "[e]ven an intervening, independent agency will not exonerate defendant unless 'the death is solely attributable to the secondary agency, and not at all induced by the primary one.' " *Id.* (quoting *Matter of Anthony M.//People v. Cable and Godbee*, 63 N.Y.2d 270, 280  (N.Y. 1984) (citation omitted) (defendants found guilty of felony murder where the jury found that the prosecution's medical evidence established that the robbery of elderly victim caused a cardiac arrest which resulted in death days

after the actual robbery)).

      *Matter of Anthony M./People v. Cable and Godbee*, 63 N.Y.2d 270, consolidated the appeals in two cases; the second case, involving defendants Cable and Godbee, is instructive here. Cable and Godbee were charged with and found guilty of felony murder after they robbed 89-year-old retired diamond merchant and his wife in their apartment. The elderly victims were threatened with a knife, bound, and left lying facedown on their living room floor. *Matter of Anthony M.//People v. Cable and Godbee*, 63 N.Y.2d at 280. The husband was also struck in the face. Two days later, he died of a myocardial infarction. The husband was taken to the hospital that afternoon, treated for the cuts and bruises, and returned home. The next day, he visited his personal physician, complaining of pains in his left lateral lower chest, just above the waistline; no EKG was taken. On July 25 he again complained of not feeling well and spent the day in bed. Late that day, some 56 or 57 hours after the theft, the victim suffered heart failure and died.

      At Cable and Godbee's trial for felony murder, depraved indifference murder, robbery and burglary, the victim's physician testified that, despite excess weight and arteriosclerosis, the victim was in "good general health" prior to the robbery. During the four years that he treated the victim, the victim's doctor had never detected any sign of heart disease in his patient.  The medical examiner who performed the autopsy testified as a pathology expert for the prosecution that in his opinion, it was possible for a 90-year-old man who had been burglarized to suffer a mild cardio-infarction that would not show up for two days, but the infarction also could have occurred without any excitement or trauma. In contrast, the medical expert for the defense dated the infarction *before* the robbery and testified that although it was "possible" that the stress of the robbery led directly to the infarct, he could not be certain of this, and he further opined that no

-18-

one could be. Finally, another medical expert testified for the prosecution in rebuttal that the

infarct occurred between 36 and 72 hours before death. Moreover, while acknowledging the

possibility of other causes, the rebuttal expert for the prosecution expressed the opinion "with a

reasonable degree of medical certainty, as well as commonsense certainty," that the emotional

and physical trauma of the burglary caused the victim's heart attack.

     The New York Court of Appeals held that, under the *Jackson v. Virginia* standard,

sufficient evidence to support the finding of causation made at Cable and Godbee's trial. The

court first reviewed the standard for finding criminal liability:

> For criminal liability to attach, a defendant's actions must have been an actual
> contributory cause of death, in the sense that they forged a link in the chain of
> causes which actually brought about the death. An obscure or a merely probable
> connection between an assault and death will, as in every case of alleged crime,
> require acquittal of the charge of any degree of homicide. A defendant's acts need
> not be the sole cause of death; where the necessary causative link is established,
> other causes, such as a victim's preexisting condition, will not relieve the
> defendant of responsibility for homicide. By the same token, death need not
> follow on the heels of injury. Even an intervening, independent agency will not
> exonerate defendant unless the death is solely attributable to the secondary
> agency, and not at all induced by the primary one. An injury may trigger
> immediate measurable deterioration and a gradual process of dying for which
> defendant is responsible, but that is not to say that a victim who evidences no
> immediate decline cannot just as surely have been set by defendant's acts on a
> certain course to death.

63 N.Y.2d at 280-81 (internal citations and quotations omitted). Although other possible causes

of the heart attack suffered by the elderly victim was not eliminated, the medical evidence,

viewed from the perspective enunciated in *Jackson*, supported the fact-finder's determination

that defendants Cable and Godbee's acts "were at least a contributing cause" of the fatality. *Id.* at

281. The New York Court of Appeals found in that case "proof in the medical evidence to

support the jury determination that the stress arising from defendants' acts was a cause of the

infarction that manifested itself two days later." *Id.* The jury was entitled to accept the medical

expert's testimony that there was a causal link between defendants' actions and the victim's

death, despite the presence of medical opinion to the contrary, for the causal link was not "so

baseless or riddled with contradiction that it was unworthy of belief as a matter of law[.]" *Id.*

(citations omitted).

In Klosin's case, the jury heard testimony that the victim had numerous health ailments,

including several heart conditions, but that they were well-controlled with various medications

prior to the incident. The jury also heard evidence as to the severe level of physical and

emotional stress incurred by the victim during the burglary, including that she became so

frightened that she lost control of her bodily functions and urinated and defecated on herself. She

could not walk or stand by herself after the incident; she was hysterical, red in the face,

hyperventilating and repeatedly clutching her chest. She had no access to her heart medication

because it was in her purse, which had been stolen by the defendant and his accomplices. For the

time that she was alive following the incident, the victim's family stated that her health seemed

to deteriorate; she was weak, tired, and complaining of headaches and sleeplessness. The victim

died less than two days after the incident. According to the medical examiner, to a reasonable

degree of medical certainty, the victim's death was caused by the "extensive" physical and

emotional stress of the burglary, which "can set off a fatal event" in a person with pre-existing

arteriorsclerosis and hypertensive disease. T.564; *see also* T.544. In Mrs. Stasio's case, the

medical examiner testified, the stress of being robbed at gunpoint in her home was "why she had

[an] acute heart attack and died."  The victim's treating physician, after examining the medical

records and the autopsy report, concurred in the medical examiner's findings as to the cause of

death. The medical examiner conceded on cross-examination that a person, such as Mrs. Stasio,

who suffered from arteriosclerosis and hypertensive heart disease could "just be sitting there and

there could be no fright and no exertion" yet still could die due the narrowing of the blood

vessels which causes a lack of blood to the heart. T.565-66.

Viewing the evidence in the light most favorable to the prosecution, and deferring to the

jury's determinations of witness credibility, the Court must conclude that a rational trier of fact

could have found that the prosecutor in Klosin's case established the essential elements of the

crime of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319; *see also*

*People v. Contes*, 60 N.Y.2d at 621.[3]   There was sufficient evidence to support the finding of

causation made at Klosin's trial since a rational fact-finder could have concluded, based on the

medical evidence, that Klosin's actions were "an actual contributory cause of death, in the sense

that they 'forged a link in the chain of causes which actually brought about the death[.]'" *Matter*

*of Anthony M./People v. Cable and Godbee*, 63 N.Y.2d at 280 (quotation omitted). The fact that

the victim had a pre-existing heart condition does not relieve Klosin of liability for causing her

death. *See id.* Furthermore, the medical examiner's concession that it was "possible" for the

victim to have died from her arteriosclerosis and hypertensive heart disease even in the absence

of physical and emotional stress does not negate the finding of a causal connection between

Klosin's actions and the victim's death. The New York Court of Appeals has explained that to

---

[3]    The Court notes that the Appellate Division in Klosin's case employed a "weight of the evidence" standard in reviewing the proof at trial, which is more favorable to a defendant than *Jackson v. Virginia*'s "legal sufficiency" standard because it requires the reviewing court to weigh the evidence in the same way as the trier of fact did. If a different finding would not have been unreasonable on the credible evidence, then the appellate court must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.

establish a causal connection sufficient for criminal liability to attach, conclusions which are only

"'contingent, speculative, or merely possible' will not suffice, but neither is absolute certainty

and the exclusion of every other possibility required." *Id.* (quotation omitted).

In sum, there was proof in the medical evidence to support the jury's determination that

the stress arising from Klosin's acts exacerbated the victim's arteriosclerosis and hypertensive

heart disease, and caused the fatal heart attack that manifested itself less than two days after the

incident. *Compare with Matter of Anthony M./People v. Cable and Godbee*, 63 N.Y.2d 270 at

281. While other possible causes of the heart attack sustained by Mrs. Stasio were not eliminated,

the medical evidence, viewed from the perspective enunciated in *Jackson*, supported the jury's

determination that Klosin's acts were at least a contributing cause of her death. *See id.* Therefore,

the Court cannot find that the prosecution failed to forge a sufficient causative link for a rational

jury to conclude that Klosin was guilty of felony murder beyond a reasonable doubt. Habeas

relief is not warranted on Klosin's claim challenging the sufficiency of the evidence supporting

the convictions for felony murder.

### Additional Grounds Raised in Petitioner's Reply Memorandum of Law

There are four additional claims in petitioner's reply memorandum of law (Dkt. #8): (1)

the prosecution was "overzealous"; (2) the trial court improperly admitted the medical opinion of

the victim's treating physician as to the cause of death; (3) the trial court's denial of a missing

witness charge was an abuse of discretion; and (4) the sentence was harsh and excessive. All of

these claims were summarily rejected by the Appellate Division on direct appeal.

As to the claim of prosecutorial "overzealousness", Klosin does not allege any instances

of actual misconduct or improper remarks during his trial; this rather appears to be a "cumulative

-22-

trial error" type of claim incorporating all of the assertions of error discussed elsewhere in his brief. The Court has reviewed the trial transcript in its entirety and did not find any instances of prosecutorial misconduct sufficient to warrant questioning the overall fairness of Klosin's trial.

With respect to the admission of the treating physician's opinion as to the cause of death, Klosin contends that the doctor was not competent to render such an opinion since he did not perform the autopsy. It is well settled that federal habeas corpus relief does not lie for mere errors of state law. *See*, *e.g.*, *Estelle v. McGuire*, 502 U.S. at 68.  In *Matter of Anthony M./People v. Cable and Godbee*, 63 N.Y.2d at 279-80, the victim's treating physician–who was not a pathologist and who did not perform the autopsy–was permitted to give his opinion as to the cause of death. Thus, Klosin has failed to demonstrate that there was an error of state evidentiary law in the admission of the treating physician's expert opinion. Nor has Klosin come forward with any precedent that admission of that testimony was erroneous as a matter of federal constitutional law. Accordingly, this claim does not provide a basis for habeas relief.

The Court turns next to Klosin's claim that the trial court erred in failing to deliver a "missing witness" charge with respect to co-perpetrator Jacob Lang, who was living in England at the time of trial. Ordinarily, a state trial court's jury instruction, such as a missing witness charge, is a matter of state law, and any error in connection therewith is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a). Like the failure to give any other jury instruction, the failure to issue a missing witness instruction does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure "so infected the entire trial that the resulting conviction violated due process." *Cupp v. Naughten*, 414 U.S. at 147. A trial court's failure to give a missing witness charge rarely warrants a reversal even on direct appeal. *See United States*

*v. Adeniji*, 31 F.3d 58, 65 (2d. Cir.1994); *United States v. Torres*, 845 F.2d 1165, 1170-71 (2d. Cir.1988). Whether the charge is given lies in the sound discretion of the trial court. *See Torres*, 845 F.2d at 1171 (citing *United States v. Erb*, 543 F.2d 438, 445 (2d. Cir.1976)); *see also Reid v. Senkowski*, 961 F.2d 374, 377 (2d. Cir.1992) (relying on standard in *Torres* to deny habeas corpus relief based on the failure to issue a missing witness jury charge).

Klosin failed to establish that he was entitled to such a charge as matter of state law or federal law. *See People v. Gonzalez*, 68 N.Y.2d 424, 427 (N.Y. 1986). A missing witness charge is inappropriate when the witness in question is equally available to both sides, or when the requested charge would be merely cumulative. *Adeniji*, 31 F.3rd at 65; *Torres*, 845 F.2d at 1171. Although Lang could have provided material testimony regarding the facts and circumstances of the crime, his testimony would have been cumulative to that provided by co-perpetrator Michael Smith and victim Jennifer Stasio. Furthermore, Klosin failed to demonstrate that Lang was "under the control of the prosecution." The trial court therefore was well within its discretion in declining to give a missing witness charge, and habeas relief is not warranted on this claim. *Accord, e.g.*, *Bass v. Scully*, 1995 WL 347040, *5 (E.D.N.Y. May 25, 1995)).

Finally, Klosin's claim that his sentence was harsh and excessive does not set forth a federal constitutional claim cognizable on habeas review because his sentence was less than the maximum provided for by New York's Penal Law. *See Dorsey v. Irvin*, 56 F.3d 425, 427 (2d Cir.1995) (denying claim that the sentencing court violated due process by considering defendant's arrest record during sentencing) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.") (citation omitted) (*per curiam*)). The Court therefore dismisses

it.

IV.    **Conclusion**

For the reasons stated above, Philip Klosin's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Klosin has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      August 7, 2007
            Buffalo, New York.